FILED
2025 Aug-08  AM 10:50
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **APRIL P. HAMMOND,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:24-cv-00861-RDP** |
| | } | |
| **COMMISSIONER OF SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff April Hammond brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB").  *See also*, 42 U.S.C. § 405(g).  Based on the court's review of the record and the briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

     **A.      Procedural History**

On August 24, 2022, Plaintiff filed an application for a period of disability and DIB, alleging disability beginning January 1, 2018. (Tr. 94, 186). Her claim was denied initially on March 3, 2023 and upon reconsideration on August 11, 2023. (Tr. 105-09, 111-14). She requested a hearing, which was held before Administrative Law Judge Patrick R. Digby ("ALJ") on January 11, 2024. (Tr. 41-66, 116-17, 148-59). In his April 15, 2024 decision, the ALJ determined that Plaintiff was not disabled under the Act between January 1, 2018 and June 30, 2021, her date last

insured. (Tr. 23). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on May 8, 2024, the decision became the final decision of the Commissioner and a proper subject for this court's review. (Tr. 1-2).

**B.     Plaintiff's Testimony**

Plaintiff was 51 years old at the time of the hearing. (Tr. 45). She completed high school and did not attend college. (*Id.*). She previously worked part-time as an online promotion representative and call-center customer service representative, and last worked full-time as a delivery driver for a dental office. (Tr. 46-47, 61, 236). Her alleged disability arises from several physical and mental conditions including herniated cervical discs, numbness and weakness in her right arm, breast cancer, diabetes, anxiety, depression, PTSD, and insomnia. (Tr. 235). According to Plaintiff, these ailments caused her to stop working at the end of 2017. (*Id.*).

Plaintiff testified that pain and weakness in her neck, back, arms, and legs render her unable to work. (Tr. 46). She stated that although her pain medications "used to work pretty well," they are "barely touching" her pain now. (Tr. 48). She also testified that diabetes affects her ability to work because she is "fine" on some days but "exhausted" and "can't function" on others. (Tr. 49). Furthermore, breast cancer-related lymphedema affects her left side, causing her hand to swell to the point of being unable to hold anything. (Tr. 46, 58). She experiences memory loss as a result of her cancer treatments and that anxiety and depression affect her ability to work because she becomes overwhelmed by "too many people." (Tr. 49-50).

Plaintiff testified that she is limited to sitting for ten to fifteen minutes before standing up or lying down, standing in one spot for ten minutes, and walking unassisted for two minutes before taking a break. (Tr. 50-51). She cannot (1) bend at her waist to retrieve something from the floor, (2) extend her arms above her head, or (3) squat, kneel, or comfortably lift more than a half-gallon

of milk. (Tr. 51-52). She sometimes uses a motorized shopping cart at the grocery store. (Tr. 51). She lies down for approximately three hours during the day. (Tr. 52). She cannot stand to cook a whole meal and must periodically sit down. (Tr. 53). She takes breaks between household chores like mopping, vacuuming, and sweeping. (*Id.*). She has difficulty driving because operating her car's manual transmission is painful, and she sometimes forgets where she is going. (Tr. 53-54). Her anxiety affects her ability to engage in social activities because she never knows whether she will have to stand or sit for an extended amount of time. (Tr. 54).

### C.     Plaintiff's Medical Records

Plaintiff has been treated by several healthcare providers for her physical conditions. In January 2017, she visited Dr. Thomas Kraus of Tennessee Valley Pain Consultants. (Tr. 1277). She complained of lower back pain radiating down her legs with a pain level of 3/10. (*Id.*). At a prior visit, she reported that her pain began after a motor vehicle accident in 2012 and that she has been treated intermittently in the intervening years. (Tr. 1282). Imaging done after the accident revealed herniated disks in her lumbar spine. (Tr. 1278). She was diagnosed with lumbar radiculopathy, degenerative disc disease, back spasms, and chronic pain. (Tr. 1277, 1285-86). Dr. Kraus performed a lumbar epidural steroid injection, which improved her pain and spasms and allowed her to function better at home. (Tr. 1282). Dr. Kraus also prescribed Norco and gabapentin for pain and methocarbamol for muscle spasms. (Tr. 1281).

Plaintiff returned to the pain clinic every four to eight weeks through at least October 2023. (Tr. 545-1346). Over the course of those visits, she stated that her pain could reach a 9/10 at its worst but also reported that her medications worked to stabilize her pain, allowing her to function at acceptable levels, and also improved her quality of life. (*Id.*). Over time, her pain spread to her neck, shoulders, and arms, and she complained of numbness, tingling, and weakness in her arms,

3

hands, and fingers. (*Id.*). Her list of diagnoses expanded to include cervical degenerative disc disease, neuralgia of the arms, and lumbago. (*Id.*). Physical examinations indicated an antalgic but steady gait, mild to moderate decreases in neck and trunk range of motion, cervical and lumbar spine tenderness, and reduced left-hand grip strength; however, the exams also showed full right-hand grip strength and normal leg strength. (*Id.*). The clinic adjusted the active ingredients and dosages of Plaintiff's prescriptions over time, but she consistently took at least one opioid and gabapentin for pain and a muscle relaxer for back spasms. (*Id.*). Although Plaintiff often reported moderate to severe pain, treatment notes frequently indicate her general satisfaction with her medication regime. (*Id.*). Furthermore, the notes contain references to relief, improved mobility, independent movement, and the ability to engage in activities like self-care, household chores with breaks, and socializing with family and friends. (*Id.*).

In July 2021, Plaintiff visited her primary care provider, Dr. Cheryl Bazzle, and reported a painful knot in her left breast. (Tr. 451). A mammogram indicated "worrisome findings" in the area of the knot that were "highly suggestive of malignancy." (Tr. 466). An ultrasound-guided biopsy revealed an invasive carcinoma with metastasis in a left axillary lymph node. (Tr. 373). In September 2021, Dr. Peter Vevon performed a partial mastectomy and sentinel node biopsy to remove the tumor. (Tr. 365-69). During a follow-up appointment in October 2021, Plaintiff reported left arm pain, which Dr. Vevon noted was associated with the sentinel node biopsy. (Tr. 339). A second procedure on October 22 confirmed that all malignant nodes had been removed, and Plaintiff's oncologist, Dr. Ehab El-Bahesh, decided not to give her chemotherapy. (Tr. 345-46). Plaintiff started radiation therapy in December 2021 and completed it in February 2022. (Tr. 481, 483). During a follow-up in February 2022, Dr. Vevon noted no pain or swelling in Plaintiff's breast or arm. (Tr. 348). And, during a follow-up in May 2022, Dr. El-Bahesh noted no evidence

4

of disease recurrence and that Plaintiff was fully active and able to carry on all pre-disease performance without restriction. (Tr. 476).

During this period, Plaintiff also received treatment for her mental health. Plaintiff's records from Tennessee Valley Pain Consultants list anxiety and depression among her problems and she was prescribed various antidepressants. (Tr. 545-1346). These records also note complaints of depression and anxiety and Plaintiff's occasional reports that sometimes she wished she "wouldn't wake up." (*Id.*). But, the records also state that Plaintiff's mood generally showed no appearance of anxiety or depression. (*Id.*). Furthermore, Plaintiff's primary care provider regularly noted she had a normal mood and affect. (Tr. 426-71).

Plaintiff received formal mental health treatment from Psychiatric Services for six months from March to September 2021. (Tr. 315-22). Appointment records note Plaintiff's diagnoses of depression and anxiety but also consistently document cooperative attitude, appropriate affect, rational thought process, good attention and concentration, good judgment, normal thought content, and good orientation. (*Id.*). Finally, although Plaintiff now complains of memory issues, she first did so after her date last insured. (Tr. 461). And, during the relevant period, medical providers consistently documented intact memory. (*E.g.*, Tr. 545-1346).

### D.    Vocational Expert Testimony

During the hearing, the ALJ asked a vocational expert ("VE") to classify Plaintiff's past relevant work. (Tr. 60). The VE focused on Plaintiff's most recent full-time job as a delivery driver. (Tr. 60-61). He testified that the best classification according to the *Dictionary of Occupational Titles* was "courier" and that this job was "light" and "unskilled." (Tr. 63).

The ALJ then asked the VE to consider a hypothetical individual with the same age, education, and employment history as Plaintiff with the following limitations who could (1)

occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) sit for six hours with normal breaks; (4) stand or walk for six hours with normal breaks; (5) push or pull to operate hand or foot controls; and (6) frequently climb ramps or stairs, stoop, kneel, crouch, crawl, and balance. (Tr. 63-64). However, the hypothetical person could not work on ladders, ropes, scaffolds, at unprotected heights, or around dangerous machinery. (*Id.*).

The VE testified that such an individual would be able to return to Plaintiff's past relevant work as a courier. (Tr. 64). Moreover, he identified three other "light" and "unskilled" jobs that such an individual could perform: production assembler (with 223,000 jobs in the national economy), sales attendant (with 115,000 jobs in the national economy), and housekeeping cleaner (with 177,000 jobs in the national economy). (*Id.*). Finally, Plaintiff's counsel asked the VE whether the same hypothetical individual could perform Plaintiff's past work if chronic pain kept her off task greater than ten percent of the time and whether the same individual could perform Plaintiff's past work or any other work if she were absent two or more days a month due to chronic pain. (Tr. 65). The VE answered both of these questions in the negative. (*Id.*).

## II.    ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "Substantial gainful activity" is defined as activity that is both "substantial" and "gainful." *Id.* § 1572. "Substantial" work activity is work that involves doing significant physical or mental activities. *Id.* § 404.1572(a). "Gainful" work activity is work that is done for pay or profit. *Id.* § 404.1572(b). If the ALJ finds that the claimant engages in activity that meets both of these criteria, then the claimant cannot claim disability. *Id.* § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of

medical impairments that significantly limits the claimant's ability to perform basic work activities. *Id.* § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See id.* §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. *Id.* § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. *Id.* § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. *Id.* § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. *Id.* § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. *Id.* § 404.1520(g). At this stage, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. *Id.* §§ 404.1520(g), 404.1560(c).

At the first step in this case, the ALJ found that Plaintiff did not engage in substantial gainful activity between her alleged onset date of January 1, 2018 and her date last insured of June 30, 2021. (Tr. 13). At the second step, he found that during the relevant period, Plaintiff's lumbar and cervical degenerative disc disease, breast cancer in remission, and obesity were severe

impairments that significantly limited her ability to perform basic work activities. (*Id.*). He also found non-severe physical impairments existed, including type II diabetes, hypertension, hyperlipidemia, and gastroesophageal reflux disease. (*Id.*). And, he found that Plaintiff's medically determinable mental impairments, including major depressive disorder and generalized anxiety disorder, were non-severe because they only minimally limited her ability to perform work activities. (Tr. 14). At the third step, he determined that, during the relevant period, Plaintiff's impairments did not meet or medically equal the severity of one of the impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 16).

After considering the entire record, including all of Plaintiff's severe and non-severe medically determinable impairments, the ALJ found that, through the date last insured, Plaintiff had the RFC to perform "light" work, as defined in 20 C.F.R. § 404.1567(b), with the following limitations: she could (1) occasionally lift or carry up to twenty pounds; (2) frequently lift or carry up to ten pounds; (3) sit for six hours with normal breaks; (4) stand or walk for six hours with normal breaks; (5) push or pull to operate hand or foot controls; and (6) frequently climb ramps or stairs, stoop, kneel, crouch, crawl, and balance. (Tr. 17). However, she could not work on ladders, ropes, scaffolds, at unprotected heights, or around dangerous machinery. (*Id.*). In support of this finding, the ALJ explained that although Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged pain and limitations, her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the record evidence. (*Id.*).

At the fourth step, based on the above RFC, the ALJ determined that Plaintiff could perform her past relevant work as a courier through the date last insured, both as it generally was performed in the national economy and as Plaintiff actually performed it. (Tr. 21). Finally, at the

fifth step, the ALJ identified three alternative occupations that exist in significant numbers in the national economy and that Plaintiff could perform considering her age, education, work experience, and RFC. (Tr. 22). Accordingly, the ALJ determined that Plaintiff was not disabled between January 1, 2018 and June 30, 2021. (*Id.*).

### III.    Plaintiff's Argument for Reversal and Remand

Plaintiff seeks reversal of the ALJ's decision and remand for award of benefits. (Doc. #13 at 11). She contends that the ALJ's determination is neither supported by substantial evidence nor based on application of the correct legal standards. (*Id.* at 5). Specifically, Plaintiff also avers that the ALJ did not properly apply the Eleventh Circuit pain standard. (*Id.*).

### IV.    Standard of Review

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported

9

by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See id.* While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

V.    **Discussion – The ALJ's decision regarding Plaintiff's RFC and ability to perform "light" work is supported by substantial evidence and the correct legal standards were applied.**

For the reasons set forth below, the court concludes that the ALJ's decision is supported by substantial evidence and that he correctly applied the law.

Plaintiff contends that the record does not contain substantial evidence to support the ALJ's analysis of her RFC or his determination that she has the RFC to perform "light" work. (Doc. #13 at 8-9). In support of this assertion, she cites numerous medical records documenting complaints of pain; x-ray results; subjective pain ratings; reports of worse pain after prolonged sitting, standing, and walking; physical examination results showing antalgic gait and spinal tenderness; and prescribed pain medications. (*Id.*). She argues that these records lend support to her complaints of debilitating pain and lack of function, undermine the ALJ's findings, and would not allow a reasonable person to conclude that she has the capacity to perform "light" work. (*Id.* at 10-11).

Plaintiff seems to misunderstand the scope of this court's review regarding substantial evidence. The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). On the contrary, if the Commissioner's findings are supported by substantial evidence, this court must affirm, even if the evidence preponderates against the Commissioner and this court may see the case differently. *Id.* And, because the ALJ's decision became the final decision of the Commissioner when the

Appeals Council denied review, this court will only evaluate whether the ALJ's determination was supported by substantial evidence. It will not, as Plaintiff seems to suggest, reweigh whether the record actually provides substantial evidence in her favor.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). In evaluating whether the ALJ's decision was supported by such evidence, this court must scrutinize the entire record "to determine [the] reasonableness of [the] decision reached." *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1989). This includes examining the record evidence that is both favorable and unfavorable to the ALJ's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

Having reviewed the record and the ALJ's decision, the court finds that the ALJ's findings are supported by substantial evidence. Plaintiff's pain clinic treatment records consistently note her general satisfaction with her medication regime and report that her medications stabilized her pain, allowed her to function at acceptable levels, and improved her quality of life. (Tr. 546-1346). Physical examination records show that Plaintiff had full right-hand grip strength, normal leg strength and muscle bulk, only mild to moderate decreases in spinal range of motion, and a steady, though antalgic, gait. (*Id.*). Treatment notes also report good pain relief, improved mobility, independent movement, and reduced interference with activities of daily living. (*Id.*). This evidence supports the ALJ's finding that Plaintiff could perform "light" work.

To be sure, Plaintiff has cited evidence in the record that supports some of her arguments. (Doc. #13 at 8-9). But, that evidence cannot be considered in a vacuum. The ALJ was required to consider the entire record, not merely isolated treatment records, in reaching his determination. (*Id.* at 9). In fact, the ALJ did just that. He acknowledged points of evidence that support Plaintiff's contentions. (*Id.* at 10). He noted Plaintiff's pain reports, limited spinal range of motion,

diminished left-arm strength, antalgic gait, and x-rays showing disc degeneration and spondylosis. (Tr. 18). He concluded that Plaintiff's impairments could reasonably be expected to cause her alleged symptoms. (Tr. 17).

Nevertheless, the ALJ determined Plaintiff's allegations were not entirely consistent with the medical evidence and other evidence in the record. (Tr. 17). For example, the ALJ considered Plaintiff's engagement in pain management treatment from January 2017 through March 2023 for her cervical and lumbar impairments. (Tr. 18-19). The ALJ observed that examinations by these providers typically showed steady though antalgic gait, decreased cervical and lumbar range of motion, and intact sensation and strength, with some observations of positive straight leg raise testing and decreased strength in the left arm after breast cancer treatment. (*Id.*). He also noted that during these visits, Plaintiff reported good pain relief with medications, allowing improved mobility and reduced interference with activities of daily living. (Tr. 18 *citing* Tr. 903, 931). Substantial evidence supports the ALJ's findings.

The ALJ also concluded that Plaintiff's statements regarding the intensity and persistence of her symptoms were inconsistent with some of the evidence. He noted that although Plaintiff typically reported back and neck pain radiating into her extremities, her pain management providers only documented restricted range of motion in the cervical and lumbar spine. (Tr. 20). She had steady though antalgic gait, intact strength and sensation, and intact range of motion in all extremities except the left upper extremity. (*Id.*). Regarding residual symptoms of Plaintiff's breast cancer, the ALJ noted Plaintiff's report that her breast cancer had been in remission since April 2022, and a statement by Plaintiff's treating provider indicating that she was "able to perform all pre-disease performance without restrictions. (Tr. 20 *citing* Tr. 483, 545-1291); *see also* 20 C.F.R. § 404.1529(a), (c)(3)-(4) (an ALJ properly considers statements from physicians as a factor in

assessing intensity, persistence, and limiting effect of symptoms). Finally, the ALJ found that Plaintiff's RFC assessment was supported by examination findings, and that the record evidence did not support greater limitations despite Plaintiff's subjective reports. (Tr. 20-21). Such symptom assessments are the province of the ALJ—not the court. *See Moore*, 405 F.3d at 1212. Therefore, even if this court would make different findings based on the same record that is not enough to overturn the findings of the ALJ. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (a court "will not disturb a clearly articulated" finding about subjective complaints supported by substantial evidence, like the ALJ's finding here). Accordingly, this court finds that the ALJ considered the record on the whole and that his determination of Plaintiff's RFC is supported by substantial evidence.

Plaintiff contends that the ALJ incorrectly applied the Eleventh Circuit pain standard, asserting that he improperly discounted her testimony of disabling pain. (Doc. #13 at 5, 11). The pain standard applies when a claimant asserts she is disabled based on subjective testimony of pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). It requires evidence of an underlying medical condition and either objective medical evidence confirming the severity of the alleged pain arising from that condition or that the objectively determined medical condition is of such a severity that it can reasonably be expected to cause the alleged pain. *Id.* In determining whether the pain standard is met, the credibility of the claimant's testimony must be considered. *Lamb v. Bowen*, 847 F.2d 698, 702 (11th Cir. 1988). If the ALJ rejects the claimant's allegations of pain, he must articulate explicit and adequate reasons for doing so. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). Further, the reasons given for discrediting pain testimony must be based on substantial evidence. *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).

The ALJ clearly articulated why substantial evidence in the record supported his findings and further noted the restrictions related to Plaintiff's RFC that may limit her to a reduced range of light exertion. (Tr. 17-21). In challenging the ALJ's findings, Plaintiff largely cites to evidence already considered by the ALJ, such as her examination findings and lumbar imaging study, as well as her subjective reports to her treating providers regarding her pain levels. (Doc. #13 at 7-9). But, that evidence simply does not show she had work-related limitations. 20 C.F.R. §§ 404.1513(a)(4), 404.1529(c)(3)(i).

Plaintiff's contentions about evidence (that was actually considered by the ALJ) are essentially a request for this court to reweigh the evidence. Again, this court may not do that nor can it decide the facts anew or substitute its own judgment for that of the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). As the Supreme Court recently held, in reviewing disability cases a court should "defer[] to the presiding ALJ, who has seen the hearing up close." *Biestek*, 587 U.S. at 98.

The ALJ considered the entire record and cited to substantial evidence in the record that supports his assessment of Plaintiff's impairments and her limitations. *See Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings."); *Borges v. Comm'r of Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.") (citation omitted).

The court is satisfied that the ALJ has adequately explained his reasoning and having already determined that his findings are supported by substantial evidence, the court finds that the ALJ has correctly applied the law.

**VI.    Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 8, 2025.

**R. DAVID PROCTOR**
CHIEF U.S. DISTRICT JUDGE